IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAROLYN ANN MORRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-3387-L-BN |
| | § | |
| ROLANDO PABLOS, in his official capacity as Texas Secretary of State; THE DALLAS COUNTY DEMOCRATIC PARTY; and CAROL DONOVAN, in her capacity as Party Chair, | § § § § § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Carolyn Ann Morris brings this *pro se* action to enjoin the enforcement of a Texas election law preventing write-in voting in a primary election. She has been granted leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No. 6, and allowed to file an amended complaint, *see* Dkt. No. 7. And the Court has referred this action to the undersigned United States magistrate judge for case management under 28 U.S.C. § 636(b). *See* Dkt. No. 8.

Defendant Rolando Pablos, in his official capacity as Texas Secretary of State, filed a motion to dismiss Ms. Morris's claim against him, under Federal Rule of Civil Procedure 12(b)(1), and an opposition to her request for a preliminary injunction. *See* Dkt. No. 9. Ms. Morris filed a response. *See* Dkt. No. 11. And Secretary Pablos filed a reply brief. *See* Dkt. No. 12.

The undersigned enters these findings of fact, conclusions of law, and

recommendation that the Court should grant the Rule 12(b)(1) motion to dismiss, deny the motion for preliminary injunction, and grant Ms. Morris leave to file one last amended complaint within a reasonable time to be set by the Court.

**Applicable Background**

Ms. Morris, in sum, appears to assert that there is a constitutional right to participate as a write-in candidate and that her constitutional right to do so was violated when she was not allowed to run as a write-in candidate for Dallas County Democratic Party Chair in the party primary. And she at least initially asked the Court to enjoin the enforcement of Texas Election Code § 172.112, which now provides in full that "[w]rite-in voting in a primary election is not permitted." TEX. ELEC. CODE § 172.112; *see generally* Dkt. Nos. 3 & 7; *see also* TEX. ELEC. CODE § 171.0231 (pertaining to write-in candidates for county chair or precinct chair).

**Legal Standards**

I. Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). As such, the Court must dismiss a complaint for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The Court will not assume it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged

affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 & n.2 (5th Cir. 1983)).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist" in any case originally filed in federal court. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted). And where, like here, a defendant files a Rule 12(b)(1) motion to dismiss, the attack of subject is considered "facial," and the Court need look only to the sufficiency of the allegations of the plaintiff's complaint, or on the complaint as supplemented by undisputed facts, all of which are presumed to be true. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981).

A "factual" attack on jurisdiction, however, is based on affidavits, testimony, and other evidentiary material. *See id.* Under such an attack, the Court "is empowered to consider matters of fact which may be in dispute," *Ramming*, 281 F.3d at 161, and, to oppose the Rule 12(b)(1) motion, "a plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction," *Paterson*, 644 F.2d at 523; *see also Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. May 1981) ("Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." (quoting *Mortensen v. First. Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977))).

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161. "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice. The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* (citations omitted).

II. Section 1915(e)(2)(B)(ii)

A district court is required to screen a civil action filed IFP and may summarily dismiss that action, or any portion of the action, if it "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Dismissal for failure to state a claim "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam); emphasis added by *Smith*), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346; *see Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A

claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)).

The rationale that factual plausibility (as opposed to legal labeling) controls the failure-to-state-a-claim analysis has even more force in this case, as the Court "must construe the pleadings of *pro se* litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), "to prevent the loss of rights due to inartful expression," *Marshall v. Eadison*, 704CV123HL, 2005 WL 3132352, at *2 (M.D. Ga. Nov. 22, 2005) (citing *Hughes v. Rowe*, 449 U.S. 5, 9 (1980)); *but see Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013) ("[L]iberal construction does not require that the Court or a defendant create causes of action where there are none.").

"Ordinarily, a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.... Granting leave to amend, however, is not required if the plaintiff has already pleaded her best case," which occurs "after she is apprised of the insufficiency of her complaint." *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations and quotation marks omitted).

## Analysis

I. Secretary Pablos

"The Eleventh Amendment bars claims against a state as well as against state officials when 'the state is a real, substantial party in interest.'" *Amrhein v. Reichert*,

No. 3:12-cv-3707-G-BK, 2013 WL 1155473, at *7 (N.D. Tex. Feb. 1, 2013) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984)), *rec. accepted*, 2013 WL 1174571 (N.D. Tex. Mar. 21, 2013); *see also K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) ("The Eleventh Amendment bars suits by private citizens against a state in federal court" and "applies not only to the state itself, but also protects state actors in their official capacities." (citing first *Hutto v. Finney*, 437 U.S. 678, 700 (1978), then *Nelson v. Univ. of Tex. at Dallas*, 535 F.3d 318, 320 (5th Cir. 2008))).

"There is, however, '[o]ne narrow caveat to state sovereign immunity' – 'the doctrine, first enunciated in *Ex Parte Young*, 209 U.S. 123 (1908), that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief' against state officials to prevent a continuing violation of federal law because such conduct is not considered to be state action.'" *White v. Spikes*, No. 3:14-cv-389-M-BN, 2015 WL 3504524, at *3 (N.D. Tex. May 28, 2015) (quoting *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 406-07 (E.D.N.Y. 2010) (citing, in turn, *Green v. Mansour*, 474 U.S. 64, 68 (1985); *Pennhurst*, 465 U.S. at 102)); *see also Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether *Young*'s exception to sovereign immunity applies, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997))).

But, for this exception to Eleventh Amendment immunity to apply, a plaintiff must demonstrate that the state officer has "some connection"

> with the enforcement of the disputed act. *Ex parte Young*, 209 U.S. at 157. The connection requirement exists to prevent litigants from misusing the exception. There are plenty of state actors. A plaintiff must show that the defendant state actors "have the requisite 'connection' to the statutory scheme to remove the Eleventh Amendment barrier to suits brought in federal court against the State." *Okpalobi v. Foster*, 244 F.3d 405, 410-11 (5th Cir. 2001) (en banc).
>
> *Ex Parte Young* gives some guidance about the required "connection" between a state actor and an allegedly unconstitutional act. "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists." *Ex Parte Young*, 209 U.S. at 157.

*K.P.*, 627 F.3d at 124 (citations modified); *see also Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 159 (5th Cir. 2007) ("*Young* requires that '[i]n making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, ... such officer must have some connection with the enforcement of the act, or else it is merely making ... the state a party.' [For example, in *Okpalobi*, b]ecause neither the authority of the Louisiana Governor nor Attorney General extended to enforcing the provision challenged by the [ ] plaintiffs, the Eleventh Amendment remained a bar to the suit. [There, the] standing analysis was thus limited to an examination of whether causation and redressability could be linked to the enforcement connection the Governor and Attorney General had with the statute." (quoting *Ex Parte Young*, 209 U.S. at 157; discussing *Okpalobi*, 244 F.3d at 426-27)); *Cressman v. Thompson*, 719 F.3d 1139, 1146 n.8 (10th Cir. 2013) ("Whether [state] officials are, in their official capacities, proper defendants in [a] suit is really the common denominator of two separate inquiries: first, whether there is the requisite

causal connection between their responsibilities and any injury that the plaintiffs might suffer, such that relief against the defendants would provide redress [i.e., Article III standing]; and second, whether ... jurisdiction over the defendants is proper under the doctrine of *Ex parte Young*, which requires 'some connection' between a named state officer and enforcement of a challenged state law." (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004))); *Scott v. Taylor*, 405 F.3d 1251, 1259 (11th Cir. 2005) (Jordan, J., concurring) ("Standing ... concerns the congruence or fit between the plaintiff and the defendants.... Thus, in a suit against state officials for injunctive relief, a plaintiff does not have Article III standing with respect to those officials who are powerless to remedy the alleged injury.").

As summarized by Secretary Pablos's motion to dismiss, Ms. Morris has failed to show a connection between Secretary Pablos's responsibilities and the harm that she alleges:

> It is perhaps no surprise that Morris learned of the amendment to §172.112[, eliminating write-in voting in the general primary election for the offices of country chair and precinct chair,] from the current Chair of the Dallas County Democratic Party. Indeed, political parties – and not the secretary of state – are responsible for the primary elections where they nominate their general election candidates. *See generally* TEX. ELEC. CODE Tit. 10 ("Political Parties"), Subchs. A ("Introductory Provisions"), B ("Parties Nominating by Primary Election"). A party's primary election duties include, inter alia, accepting candidate applications for a place on the ballot, evaluating candidate eligibility for offices sought, and transmitting candidate information to the secretary of state (who then has a purely ministerial duty to post the information online). TEX. ELEC. CODE §§172.022(a)(2); 172.028(a); 172.029. *See also* 1 TEX. ADMIN. CODE § 81.112(a) (procedures for county party chair to transmit candidate information to secretary of state). Parties also may establish a primary committee to review and approve the primary ballot before it is submitted to the county, which administers the voting process. TEX. ELEC. CODE

§172.083.

Dkt. No. 9 at 3.

For these reasons, Ms. Morris has not shown – based on her current factual allegations – that the *Ex Parte Young* exception to Eleventh Amendment immunity saves the claim she asserts against Secretary Pablos from dismissal. *See Okpalobi*, 244 F.3d at 426-27 ("Because these defendants have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in this court.... [A] state official cannot be enjoined to act in any way that is beyond his authority to act in the first place."). The Court should therefore grant his motion to dismiss.

II. Sufficiency of Constitutional Claim

Ms. Morris appears to allege a constitutional violation based on the enforcement of Texas Election Code § 172.112. But, even after being granted leave to file an amended complaint, *see* Dkt. No. 6, Ms. Morris has yet to allege a plausible claim for relief based on the state election law she appears to challenge.

Voting is no doubt a fundamental right. *See Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (recognizing "that all qualified voters have a constitutionally protected right to vote").

> However, the right to vote in any manner and the right to associate for political purposes through the ballot are not absolute. As a practical matter, there must be substantial regulation of elections to ensure fairness, honesty, and order. These necessary regulations invariably impose some burdens upon voters. Consequently, every voting regulation is not subject to strict scrutiny requiring that the regulation be narrowly tailored to advance a compelling state interest.

*Tex. Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)); *see also Republican Party of Penn. v. Cortes*, 218 F. Supp. 3d 396, 408 (E.D. Penn. 2016) ("After all, the state 'must play an active role in structuring elections … if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.'" (quoting *Burdick*, 504 U.S. at 433)).

In *Burdick*, for example, the Supreme Court upheld Hawaii's state election law's prohibition on any write-in voting and there concluded

> that when a State's ballot access laws pass constitutional muster as imposing only reasonable burdens on First and Fourteenth Amendment rights – as do Hawaii's election laws – a prohibition on write-in voting will be presumptively valid, since any burden on the right to vote for the candidate of one's choice will be light and normally will be counterbalanced by the very state interests supporting the ballot access scheme.

*Burdick*, 504 U.S. at 441.

And an intermediate Texas court of appeals has addressed the predecessor statute to Texas Election Code § 172.112 (Article 13.09) and, in doing so, rejected a challenge to that law made under the Texas Constitution and the Fourteenth Amendment to the United States Constitution:

> Each political party has the undoubted right to make nominations for the elective officers of the people. "The Legislature has the authority to prescribe reasonable methods to be employed for the purpose." The right of a qualified voter to write in the name of a candidate for any office at the general election is not questioned, but in our opinion the legislature had the right to prescribe certain procedures or methods by which a party may make its nominations, including the interdiction of write-in votes in a primary election, especially in the case of an office which is not even printed on the primary ballot. If the law permitted a voter to nominate a

> person as the candidate of a party for an office when the party itself had not seen fit to do so and no one had seen fit to announce his own candidacy, the person thus nominated would be the candidate, not of the political party, but of the individual who wrote in his name. We think this was a situation which the legislature had the right to forbid.
>
> Each political party has a right under the law to do whatever it can within the framework of the law to maintain its political integrity. Any qualified person can offer himself as a candidate for the nomination by any political party for any particular office, but the legislature had the power to enact the law giving the voters the right to know who those candidates are prior to the holding of the primary election. This is not an unreasonable regulation of party primary procedures. If no candidate has filed his application for a place on the primary ballot within the time prescribed by law, then the voters who are members of the party have a right to assume that the party is not sponsoring a candidate for that office. If the rule were otherwise, a single voter could place a candidate in the position of ostensibly being sponsored by a political party regardless of his political philosophies as compared to those of such party.

*Lydick v. Chairman of the Dallas Cty. Republican Exec. Comm.*, 456 S.W.2d 740, 743 (Tex. App. – Dallas 1970, reh'g denied) (citations omitted); *see also Chavez v. Hannah*, 827 S.W.2d 100, 101 (Tex. App. – Austin 1992, reh'g overruled) ("[W]e know of no Texas case that defines write-in voting as a fundamental right. In fact, one Texas court has stated that a statute which completely prohibits write-in voting is a reasonable exercise of state power.... We note that the federal courts have upheld legislation which completely abolishes write-in voting." (citations omitted)).

But Ms. Morris should be allowed one last opportunity to file an amended complaint to plead a plausible constitutional claim based on the Texas election law that she appears to challenge. *See Wilson v. Birnberg*, 667 F.3d 591, 598-99 (5th Cir. 2012) (recognizing that the Supreme Court's ballot-access precedent requires "courts 'to balance the individual's right to ballot access against state imposed requirements'" and

that had the plaintiff there "argued that there was some interest of his that outweighed the state's interest [supporting the election law challenged], then *Anderson* and similar cases might be applicable" (quoting *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 168 n.6 (5th Cir. 2009); citations omitted)).

The reasons set above, however, show that Ms. Morris has not yet established her right to a preliminary injunction – or any other injunctive relief – enjoining the enforcement of Texas's prohibition on write-in voting in a primary election. *See, e.g., Glossip v. Gross*, 135 S. Ct. 2726, 2736 (2015) (among other requirements, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits" (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008))). And that motion [Dkt. No. 7] should be denied without prejudice to Ms. Morris moving for injunctive relief in any amended complaint she may elect to file.

**Recommendation**

The Court should grant the Federal Rule of Civil Procedure 12(b)(1) motion to dismiss filed by Defendant Rolando Pablos, in his official capacity as Texas Secretary of State [Dkt. No. 9]; deny Plaintiff Carolyn Ann Morris's motion for preliminary injunction [Dkt. No. 7]; and grant Ms. Morris leave to file one last amended complaint within a reasonable time to be set by the Court.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 18, 2018

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE